## COMMERCE INSURANCE COMPANY vs. MARIA A. MENDONCA.

No. 01-P-335.

Middlesex. October 15, 2002. - March 5, 2003.

Present: JACOBS, COWIN, & KAFKER, JJ.

*Insurance,* Motor vehicle insurance, Construction of policy, Uninsured motorist. *Contract,* Insurance, Construction of contract. *Statute,* Construction.

In the context of an insurance coverage action brought by a passenger injured in a motor vehicle accident, this court, in interpreting the term "hit-and-run," as used in the context of the uninsured motorist statute (G. L. c. 175, § 113L) and the uninsured motorist provision of the insurance policy at issue, determined that such a provision provided protection to persons injured not only by an identified but uninsured operator or an operator whose immediate postaccident flight prevented identification, but also by an operator who did not immediately flee but nevertheless left the accident scene without being identified. [523-526]

In the context of an insurance coverage action brought by a passenger injured in a hit-and-run motor vehicle accident, this court, in construing a provision in the policy that stated that the insurer would provide protection "only if the . . . operator causing the accident cannot be identified," concluded that such language, while not improper under the uninsured motorist statute (G. L. c. 175, § 113L[1]), did not impose upon the plaintiff (who, in addition to being merely a passenger, was unaware of her injury at the time of the collision) a duty to obtain identifying information from the hit-and-run operator. [526-527]

CIVIL ACTION commenced in the Superior Court Department on April 24, 1998.

The case was heard by *Ernest B. Murphy,* J., on motions for summary judgment.

*Caroline B. Playter* for the defendant.

*John R. Callahan* for the plaintiff.

JACOBS, J. Maria Mendonca was a passenger in a car that was stopped for a red light when it was struck from behind by another vehicle. The collision occurred at approximately

10:30 P.M. on August 6, 1996, at the intersection of Massachusetts and Rindge Avenues in Cambridge. Joseph Corrigan, the owner and operator of the vehicle in which Mendonca was a passenger, asked her and another passenger if they were "ok," and when they answered that they were, he walked to the rear of his vehicle. There, he spoke with the other operator, who was standing outside his vehicle, which was stopped at the point of impact. Corrigan and the other operator inspected their respective vehicles and agreed that there was no significant damage. They each then drove away. There was evidence that the other operator drove through a red light when he left the scene of the collision. No identifying information was requested or obtained from the other operator or his vehicle before he drove off. Neither Mendonca nor the other passenger left Corrigan's vehicle during this incident.

After later discovering she had been injured, Mendonca sought compensation under the uninsured motorist provision of a policy issued by Commerce Insurance Company (Commerce) on a motor vehicle owned by her.[1] Following the filing of this declaratory judgment action, a Superior Court judge allowed Commerce's motion for summary judgment, denied Mendonca's similar motion, and ordered a judgment declaring that Mendonca was not entitled to uninsured motorist benefits under the standard Massachusetts automobile insurance policy issued to her. We reverse.

1. *Hit-and-run.* Because the term "hit-and-run" is not defined in the policy or in the uninsured motorist statute, G. L. c. 175, § 113L,[2] we must consider how that term is to be interpreted in the circumstances of this case, where the presumptively at fault

[1]Part 3 of the compulsory insurance section of the sixth edition of the standard Massachusetts automobile insurance policy provides in relevant part as follows: "Sometimes an owner or operator of an auto legally responsible for an accident is uninsured. Some accidents involve unidentified hit-and-run autos. Under this Part, we will pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit-and-run autos. We will pay only if the injured person is legally entitled to recover from the owner or operator of the uninsured or hit-and-run auto. We will pay for hit-and-run accidents only if the owner or operator causing the accident cannot be identified."

[2]General Laws c. 175, § 113L(1), as appearing in St. 1988, c. 273, § 46, in relevant part provides as follows: "No policy shall be issued . . . with respect

operator stopped after the collision and talked to the operator of the car in which Mendonca was a passenger. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982) ("The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court").

In the only Massachusetts appellate decision interpreting the term "hit-and-run," in the context of the uninsured motorist statute, the Supreme Judicial Court rejected a literal interpretation of "hit" and concluded that "physical contact is not part of the usual and accepted meaning of the term." *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 176 (1981). The court viewed the statutory words "in light of the aim to be accomplished by the Legislature . . . to minimize the catastrophic financial loss for victims of automobile accidents caused by the negligence of uninsured tortfeasors," and concluded that the retention of the "arbitrary physical contact requirement" in a policy would be inconsistent with the "broad remedial purpose" of the statute. *Id.* at 177.

Consistent with the nonliteral approach taken to the meaning of "hit-and-run" in *Surrey* is an interpretation that focuses on the failure to give identifying information and does not treat flight as an indispensable element of "run."[3] This approach is widely accepted in other jurisdictions. See 1 Widiss, Uninsured

to a motor vehicle , . . . unless such policy provides coverage . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom . . . ."

[3] Contrary to Commerce's assertion, the dictum in *Surrey* v. *Lumbermens Mut. Cas. Co.*, *supra* at 175-176 (that "[i]n all other lexical and decisional construction, 'hit-and-run' is uniformly 'synonymous with a car involved in an accident causing damages where the driver flees from the scene' " [citations omitted]), does not mandate, as matter of law, that flight be a necessary element of "run" in determining whether there has been a hit-and-run accident. Resort to dictionary definitions is hardly conclusive as to whether flight is an essential element. For example, Black's Law Dictionary 730 (6th ed. 1990) defines a hit-and-run accident as a "[c]ollision generally between motor vehicle and pedestrian or with another vehicle in which the operator of vehicle leaves scene without identifying himself and without giving certain other information to other motorist and police as usually required by statute."

To the extent that other Massachusetts statutes deal with hit-and-run scenarios, they do not require a literal definition of "run" as involving flight.

and Underinsured Motorist Insurance § 9.10, at 632-633 (2d ed. rev. 1999 & Supp. 2002), and cases cited ("In contrast to the rigid and literal construction sometimes accorded the 'physical contact' requirement in 'hit-and-run' cases . . . courts have almost invariably rejected the insurer's arguments with respect to the failure of a claimant to ascertain the identity of the tortfeasor [where a motorist stops at an accident scene]"). Prominent among these courts is the decision of the New York Court of Appeals in *Riemenschneider* v. *Motor Vehicle Acc. Indemnification Corp.*, 20 N.Y.2d 547 (1967), where, in circumstances nearly identical to the present case, the court treated "hit and run" policy language more expansively than as colloquially understood. The court stated as follows: "An injured person who is not aware of his injury until it is too late to take steps to make the necessary identification is in precisely the same situation of deprivation of remedy as he would be if he knew he were hurt but the other driver left the scene without opportunity to identify him." *Id.* at 550.

Relying on jurisdictions that treat flight from the scene as the "focal element" of the term hit-and-run, Commerce argues that where, as here, the driver who caused the collision stopped, Mendonca cannot prove the "presumptively at fault vehicle was a 'hit-and-run auto.' "[4] This narrow interpretation effectively would leave a gap in mandated coverage by providing protection to a person injured by an identified, but uninsured, operator or by an operator whose postaccident flight prevents identifica-

General Laws c. 260, § 4B, in prescribing the statute of limitations for hit-and-run tort actions, refers to an operator who "failed to make himself . . . known at the time of the accident." Also, language in G. L. c. 90, §§ 24(2)(*a*), 24(2)(*a*¹/₂)(1), can be read as imposing criminal penalties on an operator who causes a collision and who stops but does not identify himself, although the incident might not colloquially be described as a hit-and-run accident or as involving flight. In relevant part, § 24(2)(*a*), which *Surrey* v. *Lumbermens Mut. Cas. Co.*, *supra* at 176, describes as defining "hit-and-run," states, "whoever without stopping and making known his name . . . goes away after knowingly colliding with or otherwise causing injury to any other vehicle."

[4]Commerce principally relies on *Sylvestre* v. *United Servs. Auto. Assn. Cas. Ins. Co.*, 240 Conn. 544, 546 (1997), which affirmed rulings of lower courts that the "plaintiff was not struck by a 'hit and run vehicle,' as required by his insurance policy, because the driver had stopped to render assistance and had been affirmatively dismissed by the plaintiff." To the same effect is *Lhotka* v. *Illinois Farmers Ins. Co.*, 572 N.W.2d 772, 775 (Minn. Ct. App. 1998).

tion, while denying protection when the operator does not immediately flee but nevertheless leaves the accident scene without being identified. Such a coverage gap is contrary to the general purpose of legislatively mandated liability and uninsured motorist insurance, which is to give some measure of financial protection to persons injured by the negligent driving of others. See *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 285 (1991) ("General Laws c. 175, § 113L, was enacted with the broad objective of ensuring that victims of automobile accidents would be adequately compensated for their injuries when the accidents are caused by the negligence of unidentified motorists or motorists with insufficient or no liability coverage"). See also *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. at 177.[5]

2. *Mendonca as claimant.* Commerce, claiming only that there was no hit-and-run, makes no argument as to the policy provision which states as follows: "We will pay for hit-and-run accidents only if the owner or operator causing the accident cannot be identified." We examine the effect of that clause in this declaratory judgment action so as to comply with the purpose of G. L. c. 231A, § 9, to "remove, and to afford [the parties] relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations." See *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292 (1977). Although the clause is not apparent in or required by G. L. c. 175, § 113L(1), we view it, for purposes of this decision, as not improperly "erecting an artificial, arbitrary barrier to recovery." See *Surrey* v. *Lumbermens Mut. Cas. Co.*, *supra* at 177. Similarly, even if the words "cannot be identified" were to be generously interpreted as imposing a due diligence duty on the operator of a vehicle which is in a collision with another vehicle to obtain identifying information if the other operator stops, such duty should not automatically be transferred to a passenger. Analogous to decisions not permitting the imputation of a driver's negligence to an ordinary passenger, see, e.g., *Smerdon*

---

[5]Given our decision, we do not address Mendonca's argument invoking the policy provision for payment for damages caused by uninsured autos. In any event, there are no facts presented from which a reasonable inference can be drawn that the other vehicle was uninsured.

v. *Fuller*, 353 Mass. 774 (1968); Nolan & Sartorio, Tort Law § 391 (2d ed. 1989), Corrigan's action or inaction is not chargeable to Mendonca in the circumstances.[6] In any event, it would be inequitable to impose such a duty on a passenger who is unaware of an injury at the time of the collision. See *Massa* v. *Southern Heritage Ins. Co.*, 697 So. 2d 868, 872 (Fla. Dist. Ct. App. 1997) (where the plaintiff braked hard to avoid a collision, drove away without being aware of any injury, and did not identify other vehicle, the court held that any reasonable obligation to identify commences with the insured's awareness of an injury). See also *Mangus* v. *Doe*, 203 Va. 518 (1962) (at time of the accident, the plaintiff did not know he had been injured, and "there was no necessity for him to obtain [identification of the other operator or vehicle]"). In *Riemenschneider*, where, as noted above, the circumstances were nearly identical to the present case, the court permitted access to coverage where the policy described a hit-and-run driver as including one whose identity "cannot be ascertained." *Riemenschneider* v. *Motor Vehicle Acc. Indemnification Corp.*, 20 N.Y.2d at 550. Other reasons for an inability to identify the presumptively negligent operator often are accepted as grounds for recognizing uninsured coverage.[7]

*Conclusion.* Mendonca, as the insured, has met her burden of

---

[6]The facts recited in the body of this opinion are based on an agreed statement of facts submitted by the parties. To the extent that deposition evidence in the summary judgment submissions reflects a dispute as to whether Mendonca and another passenger rejected an offer by Corrigan to obtain identifying information from the other operator, the dispute did not, in light of our decision, encompass a material fact in the context of the summary judgment motion. See *Kyte* v. *Philip Morris Inc.*, 408 Mass. 162, 166 (1990).

We make no determination whether, if later proven, Mendonca's rejection of such an offer constituted a waiver of coverage. Similarly outside the scope of the declaration requested in this case is the judge's conclusion that Mendonca gave her "permission" for, or "tacitly consented" to, Corrigan's actions. Further, nothing in the summary judgment materials indicates that Mendonca had any right of control of the vehicle operated and owned by Corrigan.

[7]Among the examples cited for the inability of claimants to identify another operator or vehicle are the following: (1) claimants who have insufficient opportunity to identify the operator or the vehicle; (2) operators who provide false, inaccurate, or incomplete information; (3) operators who provide correct information at the time of a collision, but who later cannot be found; (4) injured persons who are rendered unconscious by the collision; (5) claimants who do not have an opportunity to clearly observe the vehicle causing the col-

establishing that, in the circumstances, her asserted damages fall "within the description of the risks covered." *Markline Co.* v. *Travelers Ins. Co.*, 384 Mass. 139, 140 (1981). Accordingly, the order allowing Commerce's motion for summary judgment and the judgment declaring that Mendonca was not entitled to uninsured motorist benefits are reversed, and judgment is to enter declaring that Mendonca is not precluded from benefitting from the uninsured motorist coverage under the automobile insurance policy issued to her by Commerce with respect to any damages for bodily injury suffered by her in the collision of August 6, 1996. This judgment shall not obviate the necessity for proof of the negligence of the other operator or other relevant matters not addressed by the ordered declaration.

*So ordered.*

lision; and (6) intimidated claimants who reasonably fear seeking information from the other operator. See generally Annot., Automobile Insurance: What Constitutes an "Uninsured" or "Unknown" Vehicle or Motorist, Within Uninsured Motorist Coverage, 26 A.L.R.3d 883 §§ 13, 14 (1969 & Supp. 2002); 1 Widiss, Uninsured and Underinsured Motorist Insurance § 9.10 (2d ed. rev. 1999 & Supp. 2002).