Merrimack
No. 2004-158

STEPHANY WILSON

v.

PROGRESSIVE NORTHERN INSURANCE COMPANY

Argued: October 13, 2004
Reargued: January 12, 2005
Opinion Issued: March 3, 2005

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Donald L. Smith* on the brief, and *Mr. Smith* orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Ms. Dempsey* orally), for the defendant.

DUGGAN, J. The plaintiff, Stephany Wilson, appeals an order of the Superior Court (*Smukler*, J.) granting summary judgment to the defendant, Progressive Northern Insurance Company (Progressive). Progressive cross-appeals. We reverse in part and affirm in part.

For summary judgment purposes, the parties do not dispute the following facts. On May 7, 2000, in Falmouth, Massachusetts, the plaintiff and a friend hailed a black, four-door Lincoln taxicab. The plaintiff's dog accompanied them. As the plaintiff and her dog were entering the taxicab, the taxi driver shut the car door on the dog's tail. The dog lunged toward the plaintiff and bit her face. The taxi driver transported the plaintiff to the Falmouth Hospital, where she received treatment for her injuries. The driver, however, left without providing the plaintiff any identifying information about himself or the taxi company. At the time of the accident,

the plaintiff was a named insured under an automobile liability insurance policy issued by Progressive.

On June 13, 2000, the plaintiff's attorney contacted the Falmouth Police Department to report the accident and request assistance in determining the identity of the taxi driver or taxi company. Two days later, the plaintiff's attorney contacted the Town of Falmouth Board of Selectmen in a further effort to obtain information about the taxi driver or company, but to no avail. On June 29, 2000, the plaintiff's attorney again contacted the police, but the police were unable to supply them with any information about the taxi driver or company.

By letter dated January 9, 2001, the plaintiff notified Progressive of the accident and filed an uninsured motorist (UM) claim. When Progressive denied the claim, the plaintiff filed a petition for declaratory judgment. Both parties moved for summary judgment. The trial court granted Progressive's motion and denied the plaintiff's, concluding that although the plaintiff's injuries arose from the use of a "hit-and-run" vehicle, her delay in reporting the accident prejudiced Progressive and, thus, she violated the policy's reporting provisions. Both parties appealed.

The plaintiff argues that the trial court erred in granting Progressive's motion for summary judgment because: (1) Progressive did not meet its burden of demonstrating that her delay in reporting prejudiced its efforts to investigate the accident; (2) the reporting provisions of the policy are not a mandatory condition for UM coverage to apply; and (3) the reporting provisions of the policy are inconsistent with New Hampshire's Accident and Financial Responsibility Act, see RSA ch. 264 (2004 & Supp. 2004), and are, therefore, void as a matter of law. Progressive contends that although the trial court properly granted summary judgment based upon the plaintiff's failure to comply with the reporting provisions of the policy, it erred in concluding: (1) that the taxicab was a "hit-and-run" vehicle; and (2) that the plaintiff's injuries arose from the use of the taxicab.

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Estate of Joshua T. v. State*, 150 N.H. 405, 407 (2003). If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

*I. Prejudice*

We begin by considering the plaintiff's first issue, *i.e.*, whether the trial court erred in finding that Progressive proved prejudice as a result of the plaintiff's delay in reporting the accident. Because we agree with the plaintiff that the trial court erred, we need not address her other two issues.

The policy provides: "If there is an accident or loss arising out of the ownership, maintenance or use of a vehicle, for which coverage may be provided under this policy, report it to us within twenty-four (24) hours or as soon as practicable . . . ." (Emphasis omitted.) The policy further states that an insured should also notify the police within twenty-four hours "or as soon as practicable" if the insured "cannot identify the owner or operator of a vehicle involved in the accident." (Emphasis omitted.) In defining the hit-and-run variant of "uninsured motor vehicle," the policy includes a similar notice requirement:

> a hit-and-run vehicle whose operator or owner cannot be identified and which causes an accident resulting in bodily injury *provided that the insured person, or someone on his or her behalf, reports the accident to the police or civil authority within twenty-four (24) hours or as soon as practicable after the accident.*

(Original emphasis omitted; emphasis added.)

It is settled law in this State that, in the context of an occurrence-based liability policy,

> whether there has been a breach of the policy provisions requiring notice to be given "as soon as practicable" does not depend on the length of the delay alone but also upon the reasons for the delay and whether the delay resulted in prejudice to the insurer. It is a combination of these three factors that determines whether there has been a substantial breach of the notice requirements of the policy so as to relieve the insurer of its obligation to defend and pay any judgments. The relative weight to be given these factors is for the trial court to determine. Unless no reasonable person could find that notice was given as soon as was reasonably possible, the question whether the notice requirement has been met is one of fact for the trial court.

*Commercial Union Assur. Co's v. Monadnock Regional School Dist.*, 121 N.H. 275, 277 (1981) (citation omitted); *see Dover Mills Partnership v. Comm. Union Ins. Cos.*, 144 N.H. 336, 338 (1999).

██ Thus, New Hampshire law recognizes that failure to comply with policy provisions requiring notice to be given "as soon as practicable" does not necessarily constitute a breach of the policy so as to relieve an insurer of its obligations thereunder. This is so because prejudice is central to a determination of whether failure to report constitutes a material breach of an insurance contract. *Dover Mills*, 144 N.H. at 339.

> We note that the parties have not made clear whether the policy at issue in this case is a claims-made policy or an occurrence based policy. Because we view the evidence in the light most favorable to the plaintiff, we will assume, for purposes of this appeal, that it is an occurrence based policy that requires the insurer to prove prejudice before a material breach will be found.

*Id.* (citations omitted). "[W]e have never held that an insurer is *per se* prejudiced by an unexcused prolonged delay." *Id.* at 340. Although the insurer need not show actual loss of evidence to demonstrate prejudice, it must at the very least provide the court with facts showing prejudice and not merely surmise that it may be prejudiced because certain events may have occurred in the abstract during the period of delay. *Id.*

Here, the plaintiff concedes she did not report her accident to the police within twenty-four hours or as soon as practicable. It is undisputed that she did not report the accident to Progressive until January 9, 2001, approximately eight months after the accident. The record shows that the plaintiff consulted with counsel within a month of the accident, but the plaintiff does not argue, nor does the record reveal, any explanation for her delay in reporting the claim to Progressive. Therefore, the only issue with respect to the reporting requirements of the policy is whether the trial court erred in finding that Progressive met its burden of proving prejudice due to the plaintiff's delay. *See id.* at 339.

The record contains an affidavit of the plaintiff's attorney in which he states that he instructed his paralegal to locate the taxicab involved in the plaintiff's accident. He attests that his paralegal contacted the Falmouth Police Department in June of 2000, which eventually informed her that there were no taxicabs meeting the description of the one involved in the accident legally operating in the Town of Falmouth on May 7, 2000. She also contacted the Town of Falmouth Selectmen's Office and was told that

there were five taxi companies operating in the Town of Falmouth as of the date of the plaintiff's accident, but that it would be "too labor intensive" to attempt to locate a particular taxicab.

The record also contains an affidavit of Pamela Jaquith, a casualty specialist with Progressive. In her affidavit, Jaquith states that neither the plaintiff nor her attorney supplied Progressive with the name of the taxi driver or the company for which he worked. Indeed, the plaintiff's letter to Progressive informing it of the accident and filing a UM claim also appears in the record, and does not contain any identifying information about the taxicab, driver or company. Jaquith attests: "Progressive undertook an investigation of the matter but was hampered in its effort due to the notice and lack of factual information provided." There is no indication in the record as to what this investigation entailed or how Progressive was hampered in its efforts.

Progressive argues that the trial court correctly found it was tangibly prejudiced by the plaintiff's delay in reporting the accident, based upon the inability of both the police and selectmen's office to locate the taxi driver or company. We disagree.

In its order on summary judgment, the trial court noted that the Falmouth Police Department was not able to identify either the taxi driver or company, and stated that "[i]f the trail was fresh, the circumstances would be manifestly different." The record, however, does not support the trial court's conclusion. Although it is true that the police were unable to identify the taxi driver or company, there is no evidence in the record connecting the police's inability to do so with the plaintiff's failure to provide timely notice of the accident. The police reported that there were no taxicabs matching the description the plaintiff apparently provided that were legally operating in the Town of Falmouth at the time of the plaintiff's accident. Progressive has not demonstrated, and the record does not reveal, that had the plaintiff reported the accident to the police within twenty-four hours or as soon as practicable, the police would have reached a different conclusion.

The trial court does not appear to have relied upon the selectmen's response to the plaintiff's inquiry, that it would be too labor intensive to try to identify the taxicab, in concluding that Progressive was prejudiced by the plaintiff's failure to report the accident. However, to the extent the trial court may have relied upon the selectmen's response, there is nothing in the record indicating that had the plaintiff reported the accident in a more timely manner, it would have been any less labor intensive for the selectmen to have undertaken the task of identifying the taxicab.

■ We therefore conclude that on the facts and record of this case, the trial court erred in finding that Progressive demonstrated prejudice as a result of the plaintiff's delay in reporting the accident. To the contrary, there is no connection, on this record, between the plaintiff's failure to timely report the accident and Progressive's inability to locate the taxicab, driver or company. *Cf. Commercial Union*, 121 N.H. at 278-79 (upholding finding of prejudice where there was a twenty-two month delay in reporting and adult witnesses to accident involving child were unable to remember events of day of accident).

## II. Hit-and-run vehicle

We turn now to the two issues raised by Progressive's cross-appeal. The first issue is whether, as a matter of law, the "hit-and-run" provision of the plaintiff's insurance policy should be construed to provide coverage. Because this provision is reasonably susceptible to differing interpretations, we conclude it should be construed in favor of coverage. *See Hudson v. Farm Family Mut. Ins. Co.*, 142 N.H. 144, 146 (1997).

Interpretation of the language in an insurance policy is a question of law. *Peerless Ins. v. Vt. Mut. Ins. Co.*, 151 N.H. 71, 72 (2004). We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole. *Oliva v. Vt. Mut. Ins. Co.*, 150 N.H. 563, 566 (2004). Where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Id.* However, if the policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer. *Hudson*, 142 N.H. at 146.

The plaintiff's policy provides UM coverage as follows:

[W]e will pay for damages ... which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. sustained by an insured person;
2. caused by accident; and
3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

(Emphasis omitted.) The parties do not dispute that the plaintiff is an insured person under the policy or that her injuries were caused by accident. Thus, the only issue is whether her injuries arose out of the use

of an uninsured motor vehicle. Under the policy, "uninsured motor vehicle" includes

> a land motor vehicle ... that is a hit-and-run vehicle whose operator or owner cannot be identified and which causes an accident resulting in bodily injury ....

(Emphasis omitted.) Therefore, the issue before us is whether the taxicab qualifies as "a hit-and-run vehicle whose operator or owner cannot be identified."

 The phrase "hit-and-run" is not defined in the policy. As the trial court correctly found, this phrase is susceptible to more than one interpretation and thus is ambiguous. First, a hit-and-run vehicle can be construed as a vehicle that does not stop at the scene of the accident. For example, in *Soule v. Stuyvesant Insurance Co.*, we noted that the phrase is "synonymous with a car involved in an accident causing damages where the driver flees from the scene." *Soule v. Stuyvesant Ins. Co.*, 116 N.H. 595, 597 (1976) (quotation omitted). Alternatively, a vehicle that stops at the scene of the accident but then leaves before the driver provides identifying information may also be considered a hit-and-run vehicle. Under the Financial Responsibility Act, RSA 264:25, I (2004), it is a criminal offense to leave the scene of an accident involving personal injury or property damage without providing identifying information. The driver must immediately stop the vehicle at the scene of the accident and give "to any person injured, and to the owner of any property damaged, the driver's name and address, driver's license number" and other information. *Id.* Given these alternative definitions of the phrase, it is ambiguous and will be construed in favor of coverage. *See Hudson*, 142 N.H. at 146.

Focusing simply on whether the taxicab driver fled the scene reflects a narrow view of hit-and-run. This approach is inconsistent with the purpose of uninsured motorist coverage:

> This narrow interpretation effectively would leave a gap in mandated coverage by providing protection to a person injured by an identified, but uninsured, operator or by an operator whose postaccident flight prevents identification, while denying protection when the operator does not immediately flee but nevertheless leaves the accident scene without being identified. Such a coverage gap is contrary to the general purpose of legislatively mandated liability and uninsured motorist insurance,

which is to give some measure of financial protection to persons injured by the negligent driving of others.

*Commerce Ins. Co. v. Mendonca*, 784 N.E.2d 43, 46 (Mass. App. Ct. 2003).

■ We previously rejected a literal interpretation of this phrase when we held that a vehicle need not make physical contact with the insured in order to qualify as a hit-and-run vehicle. *Soule*, 116 N.H. at 597. Other jurisdictions that have adopted a broader view of hit-and-run "focus[] on the failure to give identifying information and do[] not treat flight as an indispensable element of 'run.'" *Commerce Ins. Co.*, 784 N.E.2d at 45 (holding that failure of plaintiff to obtain identifying information from driver does not preclude uninsured motorist coverage where plaintiff was a passenger in the car that was struck and said she had not been injured); *see also Muller v. Firemen's Fund Ins. Co.*, 682 N.E.2d 331, 335 (Ill. App. Ct.), *appeal denied*, 689 N.E.2d 1140 (Ill. 1997) (finding uninsured motorist coverage where the plaintiff was involved in a multi-vehicle accident, was not able to identify which vehicle struck hers, and the driver of that vehicle failed to comply with statutory requirements to provide identifying information). This non-literal interpretation of hit-and-run is consistent with the policy considerations underpinning uninsured motorist coverage.

■ Furthermore, the injured plaintiff did not have an affirmative obligation to obtain identifying information from the driver of the taxicab. The policy requires the insured to report information about an accident to the insurer, including the names and addresses of all persons involved, "as it is obtained." The hit-and-run provision of the policy also requires the insured to report the accident to the police within twenty-four hours or as soon as practicable. These obligations do not impose a responsibility on the part of the plaintiff, who was injured in the accident, to gather evidence at the scene. *See, e.g., Walsh v. State Farm Mutual Automobile Ins. Co.*, 234 N.E.2d 394, 398 (Ill. App. Ct. 1968) ("The language of the policy does not reveal that the parties had agreed that the insured would attempt to obtain the identity of the driver of the offending vehicle at the risk of her own physical safety."). The circumstances of this case are easily distinguished from cases in which the plaintiff was not aware of her injuries and affirmatively dismissed the driver from the scene of the accident. *See Lhotka v. Illinois Farmers Ins. Co.*, 572 N.W.2d 772, 775 (Minn. Ct. App. 1998); *Sylvestre v. U.S.A.A. Cas. Ins. Co.*, 678 A.2d 1005, 1008 (Conn. App. Ct. 1996), *aff'd*, 692 A.2d 1254 (Conn. 1997).

Thus, we agree with the trial court's conclusion that the taxicab was a hit-and-run vehicle under the policy.

### III. Use of the vehicle

Finally, Progressive argues that the plaintiff's injuries did not arise out of the use of the taxicab. We disagree.

As noted above, interpretation of the terms of an insurance policy is a question of law for this court to determine. *Lebroke v. U.S. Fid. & Guar. Ins. Co.*, 146 N.H. 249, 250 (2001). Under the policy, Progressive is obligated to pay for damages which "aris[e] out of the ownership, maintenance, or use of an uninsured motor vehicle."

In *Walsh v. Amica Mutual Insurance Co.*, we interpreted the phrase "[a]rising out of" an automobile's use to mean "originating from, or growing out of, or flowing from the use." *Walsh v. Amica Mut. Ins. Co.*, 141 N.H. 374, 375 (1996) (brackets and quotation omitted). We explained that "[t]he term 'use' refers to use of the automobile in its inherent nature as a vehicle." *Id.* Thus, to warrant coverage, "the operator must have been using his vehicle or behaving as a motorist at the time the plaintiff was injured." *Id.* (quotation omitted).

A causal connection must exist between the use of the vehicle and the resulting harm in order to invoke coverage. *Akerley v. Hartford Ins. Group*, 136 N.H. 433, 436 (1992). Although proximate causation is not required, a tenuous connection with an automobile is not sufficient for coverage. *Id.* at 439. "The fact that the vehicle may have served as the situs of [the] injury does not make such use of the vehicle one which would be sufficient to warrant coverage." *Id.* at 440. Thus, in *Walsh*, we concluded that where the operator of the vehicle got out of the car and used the windshield to steady his weapon as he shot at the plaintiff, that use was "not a normal use for which a vehicle is intended; consequently, any connection to the plaintiff's injuries is too tenuous to warrant coverage." *Walsh*, 141 N.H. at 376.

Progressive relies on *Lebroke*, in which the intervenor was bitten by the plaintiff's dog as she loaded brochures into the plaintiff's automobile. *Lebroke*, 146 N.H. at 249. We held that the automobile policy at issue did not provide coverage for the plaintiff because the injury did not arise from an "auto accident," which requires, "at the very least, the involvement of an automobile." *Id.* at 250. Although the injury occurred while the intervenor was loading items into the automobile, there was no causal connection between the automobile and the injury. Because the automobile

was merely the situs of the injury, we concluded that the dog bite could not be considered an "auto accident." *See id.* at 251.

██ Here, by contrast, the injury was the result of the taxi driver closing the car door, an act that is part of using the automobile. The fact that the dog, not the door, was the immediate cause of the injury does not negate the allegation that the driver's negligence in closing the door was sufficient to establish more than a tenuous connection between the use of the vehicle and the injury to the plaintiff. Thus, we conclude that the plaintiff's injuries arose out of the use of an uninsured motor vehicle.

Accordingly, we conclude that: (1) Progressive did not meet its burden of proving that it was prejudiced by the plaintiff's failure to provide timely notice; (2) the taxicab was a "hit-and-run" vehicle under the policy; and (3) the plaintiff's injuries arose from the use of the taxicab.

*Affirmed in part and reversed in part.*

NADEAU, J., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred; BRODERICK, C.J., with whom DALIANIS, J., joined, dissented.

BRODERICK, C.J., dissenting. Because I believe that the taxicab in this case was not a "hit-and-run" vehicle, I respectfully dissent from part II of the majority's opinion.

The relevant facts are undisputed and fully recited by the majority. On appeal, Progressive contends that although the trial court was correct in granting its motion for summary judgment, the court erred in concluding, among other things, that the taxicab was a "hit-and-run" vehicle. I agree.

The "hit-and-run" variant of uninsured motor vehicle under the plaintiff's policy reads:

> a hit-and-run vehicle whose operator or **owner** cannot be identified and which causes an **accident** resulting in **bodily injury** provided that the **insured person**, or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (24) hours or as soon as practicable after the **accident**.

The policy does not define the term "hit-and-run."

The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for this court to decide. *Peerless Ins. v. Vt. Mut. Ins. Co.*, 151 N.H. 71, 72 (2004). In resolving the issue, we look to the plain and ordinary meaning of the policy's words in context. *Id.* We

construe them objectively, and where the terms of a policy are clear and unambiguous, we accord them their natural and ordinary meaning. *Id.* We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole. *Oliva v. Vt. Mut. Ins. Co.*, 150 N.H. 563, 566 (2004).

As it pertains to the driver of a vehicle, the term "hit-and-run" is defined as "guilty of leaving the scene of an accident without stopping to render assistance or to comply with legal requirements." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1074 (unabridged ed. 2002). We similarly construed the term in *Soule v. Stuyvesant Insurance Co.*, 116 N.H. 595 (1976), where we stated in dictum that "[t]he use of the term 'hit-and-run' is synonymous with a car involved in an accident causing damages where the driver flees from the scene." *Soule*, 116 N.H. at 597 (quotations and ellipsis omitted); *accord Halseth v. State Farm Mut. Auto. Ins. Co.*, 268 N.W.2d 730, 733 (Minn. 1978) (term "hit-and-run" synonymous with vehicle involved in accident causing damages where driver flees from scene, regardless of whether or not physical contact between vehicles occurs).

Here, the taxi driver transported the plaintiff to the hospital following the accident. Moreover, there is no evidence in the record that the plaintiff ever asked the taxi driver for any identifying information, or that the driver attempted to conceal such information from the plaintiff. Furthermore, nothing in the record indicates that the plaintiff was unaware she had been injured.

The plaintiff contended at oral argument that she did not ask the taxi driver for identifying information because she was injured, "bleeding very heavily" and "in a panicked state" following the accident. However, there is no evidence in the record that she was "bleeding very heavily" or "in a panicked state," that her injuries prevented her from asking the taxi driver for identifying information, or that she failed to ask for such information due to her state of mind.

Therefore, applying the dictum in *Soule* to the facts of this case, I would hold that the taxicab was not a "hit-and-run" vehicle and, consequently, would conclude that the trial court erred as a matter of law in ruling to the contrary. *Cf. Lhotka v. Illinois Farmers Ins. Co.*, 572 N.W.2d 772, 774-75 (Minn. Ct. App. 1998) (accident not "hit-and-run" where driver stopped after accident, inquired about injury to insured, made no attempt to conceal identity and left only after insured asserted she was not injured); *Muller v. Firemen's Fund Ins. Co.*, 682 N.E.2d 331, 335-36 (Ill. App. Ct. 1997) (insured entitled to coverage under "hit-and-run" provision because,

among other things, she was rendered unconscious by accident and was therefore not *able* to obtain identifying information from other driver). *But see Commerce Ins. Co. v. Mendonca*, 784 N.E.2d 43, 45-47 (Mass. App. Ct. 2003) (vehicle "hit-and-run" under uninsured motorist provision in passenger's policy where driver stopped and spoke with driver of vehicle in which passenger was riding but left without first providing identifying information, and passenger not aware she was injured). The majority's conclusion is, on the facts of this case, contrary to the commonly accepted meaning of the phrase "hit-and-run" that we previously articulated in *Soule*.

Because I would hold that the taxicab in this case was not a "hit-and-run" vehicle, I would, on that basis, conclude that the plaintiff is not entitled to UM coverage. However, although the trial court erred in ruling that the taxicab was a "hit-and-run" vehicle, I would not reverse because the trial court, albeit for the wrong reason, also concluded that the plaintiff was not entitled to UM coverage. *See In re Estate of Laura*, 141 N.H. 628, 633 (1997) (when trial court reaches correct result, but on mistaken grounds, this court will sustain decision if valid alternative grounds support it). Thus, I would affirm the trial court's grant of summary judgment to Progressive and denial of summary judgment to the plaintiff. Accordingly, I dissent.

DALIANIS, J., joins in the dissent.