Hillsborough-northern judicial district
No. 2006-879

LEAH BARBUTO

v.

PEERLESS INSURANCE COMPANY

Argued: September 6, 2007
Opinion Issued: December 18, 2007

*Law Office of David C. Dunn, P.A.*, of Manchester (*David C. Dunn* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Danielle L. Pacik* on the brief, and *Mr. Dunn* orally), for the respondent.

DUGGAN, J. The respondent, Peerless Insurance Company (Peerless), appeals an order of the Superior Court (*Mangones*, J.) granting summary judgment in favor of the petitioner, Leah Barbuto, in a declaratory judgment action to determine whether Peerless was entitled to reduce the petitioner's underinsured motorist benefits by the amount she recovered in a settlement with an underinsured tortfeasor. We reverse.

The record supports the following. The petitioner was injured in an automobile accident caused by the driver of another vehicle. At the time of the accident, the petitioner was an insured under a motor vehicle insurance policy issued by Peerless, with a liability limit of $100,000. After obtaining permission from Peerless, the petitioner settled with the tortfeasor for the $50,000 liability limit of the tortfeasor's policy. Because this amount failed to fully compensate the petitioner for all of her injuries, she sought an additional $100,000 from Peerless under the policy's underinsured motorist coverage. Peerless denied the claim for $100,000,

and instead paid the petitioner $50,000, claiming it was entitled to reduce the amount of recoverable underinsured benefits by the $50,000 settlement.

The petitioner brought a declaratory judgment action alleging that Peerless was not entitled to offset her award by the tortfeasor's settlement until she was fully compensated for her damages. The trial court ruled that Part C of the "Uninsured Motorists Coverage" section of the policy unambiguously allowed Peerless to offset the petitioner's recovery from the settlement, but that language in Part F of the "General Provisions" section conflicted with this provision. These conflicting provisions, the trial court held, rendered the policy ambiguous and compelled a finding that Peerless was not entitled to the offset.

On appeal, Peerless asserts that the petitioner's settlement with the tortfeasor should be credited against the policy's limit of coverage, rather than against the actual damages sustained by the policy holder. It argues that the trial court erred in concluding that the policy is ambiguous. Specifically, Peerless contends that Part F of the "General Provisions" section and Part C of the "Uninsured Motorists Coverage" section do not conflict because Part F deals exclusively with reimbursement and subrogation rights, which are distinguishable from the setoff rights governed by Part C. Peerless also maintains that the trial court's interpretation would render meaningless the provision in Part C which requires the limit of liability to be reduced by all sums paid by a tortfeasor. Finally, Peerless argues that the court improperly concluded that the policy is ambiguous because Peerless' interpretation "would potentially lead to a confusing conclusion."

Interpretation of the language in an insurance policy is a question of law. *Peerless Ins. v. Vt. Mut. Ins. Co.*, 151 N.H. 71, 72 (2004). We construe the language of an insurance policy as would a reasonable person in the position of the insured based upon a more than casual reading of the policy as a whole. *Wilson v. Progressive N. Ins. Co.*, 151 N.H. 782, 788 (2005). Where the terms of the policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Id.* However, if the policy is reasonably susceptible to more than one interpretation and one interpretation favors coverage, the policy will be construed in favor of the insured and against the insurer. *Id.* For exclusionary language to be considered clear and unambiguous, two parties cannot reasonably disagree about its meaning. *Trombley v. Liberty Mut. Ins. Co.*, 148 N.H. 748, 751 (2002). Pursuant to RSA 491:22-a (1997), "the burden of proving lack of insurance coverage is on the insurer." *Maville v. Peerless Ins. Co.*, 141 N.H. 317, 320 (1996).

Part C of the "Uninsured Motorists Coverage" section of the petitioner's policy provides, in relevant part:

> With respect to damages caused by an accident with an "underinsured motor vehicle":

>> 1. The limit of liability shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

We interpreted this exact policy language in *Deyette v. Liberty Mutual Insurance Co.*, 142 N.H. 560, 561-62 (1997), as clearly and unambiguously allowing the insurance company to limit its liability. We explained that because "[t]he plaintiffs purchased uninsured motorist coverage . . . with a limit of $100,000 . . . the plaintiffs should reasonably expect to recover only up to that amount . . . ." *Deyette*, 142 N.H. at 563. Here, the trial court found, under *Deyette*, that absent other considerations, Part C of the "Uninsured Motorists Coverage" would allow Peerless to reduce the petitioner's award by the tortfeasor's settlement.

The trial court, however, went on to consider the effect of Part F of the policy's "General Provisions" section, which, under a subsection entitled "Our right to recover payment," states, in relevant part: "If we make a payment under: 1. Part C[.] of this policy [the underinsured motorist provision], we shall be entitled to recovery under paragraph A. or B. only after the person has been fully compensated for damages." Paragraph A provides, in pertinent part: "If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right." Paragraph B provides: "If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall: 1. Hold in trust for us the proceeds of the recovery; and 2. Reimburse us to the extent of our payment."

The trial court found that a reasonable insured could interpret Part F of the "General Provisions" section to mean that "payments the insured receives from other parties will not be used to offset the limit of the insured's policy unless the insured has been fully compensated for [her] damages." Although Peerless argued that Part F of the "General Provisions" section dealt with reimbursement, rather than setoff, the trial court found that *Kelly v. Prudential Property & Casualty Insurance Co.*, 147 N.H. 642 (2002), compelled a finding that this provision could reasonably be construed as addressing setoff. Relying upon our interpretation of similar policy language in *Kelly*, which we stated "clearly

and unambiguously permit[ted the insurer] to *offset* the plaintiffs' recovery from the tortfeasor," *Kelly*, 147 N.H. at 644 (emphasis added), the trial court found that Part F was also an *offset* clause. Therefore, the trial court concluded that this *offset* provision, requiring the insured to be fully compensated before Peerless is entitled to recovery, conflicts with Part C of the "Uninsured Motorists Coverage" section, the *offset* provision allowing Peerless to reduce its limit of liability by any settlement regardless of whether the insured is fully compensated. Accordingly, the trial court found the policy to be ambiguous. Because there was no dispute that the petitioner's damages exceeded $100,000, it determined that Peerless could not reduce the $100,000 limit of the policy by the $50,000 settlement until the petitioner was fully compensated for her damages.

In *Kelly*, the insured was injured in an automobile accident, sustaining damages of $225,000. *Id.* at 642. At the time of the accident, the insured carried uninsured motorist insurance with a $100,000 limit. *Id.* at 642-43. The insured settled with the tortfeasor for $50,000, and subsequently sought to recover under the uninsured motorists policy. *Id.* The insurer offset the insured's coverage by the $50,000 settlement, making $50,000 in coverage available to the insured. *Id.* at 643. The insured sought a declaration that the insurance company could not reduce uninsured motorists benefits by the insured's settlement with the tortfeasor. *Id.*

In determining whether the insurance company could reduce the uninsured motorists benefits by the $50,000 settlement, we interpreted two provisions in the policy. The "Trust Agreement" provision of the general policy provided, in pertinent part: "When we pay for a loss under this policy, we are entitled to the amount we paid from the proceeds of any settlement or judgment you recover from the responsible party." *Kelly*, 147 N.H. at 643 (quotations omitted). We determined that this language "clearly and unambiguously permits [the insurer] to offset the plaintiffs' recovery from the tortfeasor." *Id.* at 644. In essence, this provision meant that the insurer was "always entitled to offset a plaintiff's recovery by any amounts recoverable from a tortfeasor." *Id.*

A second provision, however, also addressed the possibility of reducing the insurance company's payment by a settlement with the tortfeasor. The "Payments Reduced" provision, located in the Uninsured Motorists booklet of the policy, stated in relevant part: "Payments will be reduced by any amount . . . so that the total amount due does not exceed the amount of damage." *Id.* We held that this provision could be reasonably read to mean that the insurance company "may reduce its payment to a plaintiff only when a plaintiff's recovery exceeds the amount of the plaintiff's damages." *Id.* Accordingly, because both offset provisions could not apply, and because they conflicted, a reasonable insured "could conclude that the

Payments Reduced provision ... supersede[d] the general Trust Agreement provision." *Id.* The insurer therefore could not offset the insured's uninsured motorists benefits by the amount paid by the tortfeasor. *Id.*

■ Unlike *Kelly*, the two policy provisions at issue here can apply without conflict. Part C of the "Uninsured Motorists Coverage" section, as we held in *Deyette*, clearly and unambiguously allows Peerless to reduce the policy's $100,000 liability limit by the $50,000 settlement. This setoff provision is the type typically used by an insurer to reduce or eliminate payments made to the insured in the first instance. *See, e.g.*, 3 I. E. SCHERMER & W. J. SCHERMER, AUTOMOBILE LIABILITY INSURANCE §§ 40:1, 40:2 (4th ed. 2004). Moreover, by specifically referencing "limit of liability" in the "Uninsured Motorists Coverage" section of the policy, the insured is put on notice that any payments made by the tortfeasor will be used as a setoff against the underinsured motorists coverage limit of $100,000. *Cf. Deyette*, 142 N.H. at 563.

■ Conversely, Part F of the "General Provisions" section clearly concerns reimbursement and applies *after* Peerless has made the initial payment, here the $50,000 payment as calculated under Part C of the "Uninsured Motorists" section. This right of reimbursement is conceptually distinct from the right of setoff. *See, e.g., Deyelte*, 142 N.H. at 563 (acknowledging that an insurer may *reduce* payments under uninsured motorists coverage even though the injured insured has not been fully compensated, but may not exercise *subrogation* rights against non-motorist tortfeasors until the insured is fully compensated); 3 A. L. WIDISS & J. E. THOMAS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE §§ 41.7, 44.4 (3d ed. rev. 2005). Under Part F, Peerless would not be entitled to any reimbursement for the $50,000 it already paid until the petitioner is fully compensated. Under facts not present here, where the insured collects funds from other sources after Peerless has made a payment, Part F may entitle Peerless to be reimbursed to the extent of its payment so long as the insured is fully compensated. Thus, under this policy, both Peerless' right of setoff and reimbursement can apply without conflict.

By referring to the "Trust Agreement" and "Payments Reduced" provisions in *Kelly* as "offset" provisions, we did not intend to imply that there is no distinction between setoff and reimbursement provisions. Such a holding would effectively prohibit insurance policies from both limiting liability on underinsured motorists claims and permitting subrogation or reimbursement. Our holding in *Kelly* was only that the specific language of the "Payments Reduced" and "Trust Agreement" provisions in that policy

conflicted. These provisions conflicted because applying both provisions would have rendered the "Payments Reduced" provision meaningless. If the insurance company was always entitled to recover payments by any amount recoverable from a tortfeasor, as provided under the "Trust Agreement," the provision allowing the insurance company to reduce its payment only when the plaintiff's recovery exceeded damages would have no effect. Thus, regardless of the terminology we used to refer to each provision in *Kelly*, unlike the two provisions in the Peerless policy, the provisions there did conflict.

Because we find that the policy language is unambiguous, we do not reach Peerless' remaining arguments. Accordingly, we hold that Peerless is entitled to reduce its $100,000 payment to the petitioner by $50,000, the amount the tortfeasor paid in the settlement with the petitioner.

*Reversed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.