# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| MAIA KATHRYN MICHAEL | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N17A-02-003-JRJ |
| | ) | |
| DELAWARE BOARD OF NURSING, | ) | |
| | ) | |
| Appellee. | ) | |

## OPINION

Date Submitted: June 9, 2017
Date Decided: September 8, 2017

*Upon Appeal from the January 11, 2017 Order of the Board of Nursing*:
**AFFIRMED.**

Gary W. Alderson, Elzufon, Austin & Mondell, P.A., Esquire, 300 Delaware Avenue, 17th Floor, P.O. Box 1630, Wilmington, Delaware, Attorney for Appellant.

Jennifer L. Singh, Deputy Attorney General, Delaware Department of Justice, 102 W. Water Street, Dover, Delaware, Attorney for Appellee.

**Jurden, P.J.**

# I. INTRODUCTION

In 2011, the Delaware Board of Nursing suspended Appellant Maia Michael's nursing licenses after Michael impersonated a physician in order to obtain prescription medication, conduct for which Michael also received a criminal conviction of Obtaining a Controlled Substance by Deception.[1] In 2013, the Board permanently revoked Michael's nursing licenses based on the finding that Michael worked as a nurse while her licenses were suspended.[2] In 2015, the Governor pardoned Michael's conviction for Obtaining a Controlled Substance by Deception,[3] and in 2016, Michael first applied to have her licenses reinstated. After the Board proposed to deny the reinstatement based on the permanent revocation of Michael's licenses, Michael applied for licensure by examination.[4] By Order dated January 11, 2017, the Board denied Michael's applications for reinstatement and licensure by examination.[5] Before the Court is Michael's appeal of the Board's January 11, 2017 Order.

---

[1] Appellee's Answering Brief ("Answering Brief"), Appendix, May 12, 2011 Order of the Board of Nursing ("May 12, 2011 Order") at A6–7 (Trans. ID. 60538483).

[2] Opening Brief of Appellant in Support of Her Appeal of the January 11, 2017 Order of the Board of Nursing ("Opening Br."), Ex. E, October 9, 2013 Order of the Board of Nursing ("Oct. 9, 2013 Order") (Trans. ID. 60449218).

[3] Opening Br., Ex. G, June 26, 2015 Pardon.

[4] Opening Br., Ex. H, May 11, 2016 Board of Nursing Meeting Minutes ("May 11, 2016 Minutes") at 5–6; Opening Br., Ex. I, July 13, 2016 Board of Nursing Meeting Minutes ("July 13, 2016 Minutes") at 6.

[5] January 11, 2017 Order (Trans. ID. 60154923).

## II. BACKGROUND

In late 2008, Maia Michael illegally obtained a physician's Drug Enforcement Agency number, impersonated a physician, and ordered Xanax prescriptions in her own name.[6] On December 9, 2008, Michael was arrested and charged with Obtaining a Controlled Substance by Misrepresentation, Fraud, Forgery or Deception and Criminal Impersonation.[7] On February 12, 2009, Michael pled guilty to one count of Obtaining a Controlled Substance by Deception.[8] Michael was enrolled into the drug diversion program, which, upon successful completion, would have resulted in no criminal conviction.[9] Michael failed to comply with the terms of the program, and thus the conviction became effective.[10]

As a result, the Department of Justice filed a complaint with the Board of Nursing seeking revocation of Michael's nursing licenses.[11] The Board scheduled a hearing for February 9, 2011. Although Michael received notice of the hearing, she failed to appear.[12] The Board conducted the hearing and voted to revoke Michael's licenses.[13] Michael requested that the Board reopen the hearing so that she might

---

[6] *Michael v. Delaware Bd. of Nursing*, 2012 WL 1413573, at *1 (Del. Super. Feb. 16, 2012).
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

3

testify, and the Board granted Michael's request.[14] On April 13, 2011, the Board held the requested hearing, and Michael admitted that she committed the crime for which she was convicted, described her actions with particularity, apologized, and accepted responsibility.[15]

The Board voted to suspend Michael's licenses, and on May 12, 2011, the Board issued an Order setting forth its finding that, pursuant to 24 *Del. C.* §§ 1922(a)(2), (3), and (8), Michael was convicted of a crime substantially related to the practice of nursing, is unfit and incompetent to practice nursing, and is guilty of unprofessional conduct.[16] With respect to the finding of unprofessional conduct, the Board found that Michael violated: (1) Board of Nursing Regulation 10.4.2.1, in that her behavior failed to conform to the legal standards and accepted standards of the nursing profession and adversely affected the health and welfare of the public, and (2) Regulation 10.4.2.15 in that she diverted, possessed, obtained, and administered prescription drugs to herself without authorization.[17] Based on these findings, the Board suspended Michael's nursing licenses for five years, conditioned on Michael's presentation to the Board a certification of

---

[14] *Id.*
[15] *Id.*
[16] May 12, 2011 Order at A4–5.
[17] *Id.* Board Regulation 19.4.2.15 in the May 12, 2011 Order is now Board Regulation 10.4.2.17.

4

successful completion of the TASC program.[18] Michael appealed, and the Court affirmed the decision of the Board.[19]

From June 2011 until January 31, 2012, Michael worked as a nurse while her licenses were suspended.[20] The Department of Justice again filed a complaint with the Board against Michael, and on October 9, 2013, the Board found that Michael committed unprofessional conduct under 24 *Del. C.* § 1922(a)(8), and violated 24 *Del. C.* § 1924 by practicing without a valid license. Based on Michael's failure to comply with the Board's suspension of her licenses, the Board permanently revoked her licenses.[21] Michael did not appeal.

On June 26, 2015, the Governor issued a full pardon for Michael's Obtaining Controlled Substances by Deception conviction,[22] and on March 31, 2016, Michael applied to have her licenses reinstated.[23] On May 11, 2016, the Board voted to "propose to deny" the reinstatement of the licenses because the licenses were permanently revoked and thus could not be reinstated.[24]

---

[18] *Id.* at A6–7.
[19] *Michael*, 2012 WL 1413573, at *4.
[20] Oct. 9, 2013 Order at 1.
[21] *Id.* at 2.
[22] Opening Br., Ex. G, June 26, 2015 Pardon. The Pardon states, in pertinent part, "the Board of Pardons has recommended that a pardon be granted based upon the lack of opposition from the State, the passage of time without any further incidents, the lack of any prior or subsequent record, and the need for a pardon for employment purposes[.]" *Id.*
[23] Answering Brief, Appendix, Application for Reinstatement at A10–13.
[24] May 11, 2016 Minutes at 5–6.

On June 10, 2016, Michael applied for licensure by examination,[25] and on July 13, 2016, the Board again proposed to deny Michael's application because, "insofar as the Board is only authorized to *permanently* revoke licenses under 24 *Del. C.* § 1922(b)(1), Ms. Michael is not eligible to be granted a Delaware nursing license by endorsement, examination, or reinstatement."[26] At Michael's request, the Board held a hearing on November 8, 2016.[27] At the hearing, Michael and the Board submitted documentary evidence, and the Board heard Michael's testimony and oral argument from Michael's counsel.[28]

The Board issued a written order on January 11, 2017. In that Order, the Board set forth its conclusion that the Board is bound by the 2013 Board Order permanently revoking Michael's licenses. The Board also concluded that Michael's pardon does not change the outcome because: (1) the Board suspended Michael's licenses not only for being convicted of a crime substantially related to nursing, but also for being unfit to practice by reason of negligence, habits, or other causes, and for unprofessional conduct; and (2) the Board ultimately revoked Michael's licenses

---

[25] Answering Br., Appendix, Application for Licensure by Examination at A14–17. Michael also applied for licensure by endorsement. Answering Br., Appendix, Application for Licensure by Endorsement at A18–22. However, at a November 8, 2016 hearing, Michael conceded that an application by endorsement is not appropriate and withdrew the Application. Opening Br., Ex. J, November 8, 2016 Hearing Transcript at 9:23–10:6.

[26] January 11, 2017 Order at 1 (emphasis added).

[27] The precise date of the November hearing is unclear. The hearing transcript states that the proceeding occurred on November 8, but the Board's January 11, 2017 Order states that the hearing was held on November 14.

[28] Opening Br., Ex. J, November 8, 2016 Hearing Transcript.

6

when she practiced nursing while her license was suspended, i.e. Michael's licenses were permanently revoked for conduct separate and distinct from the original suspension.[29]

## III. PARTIES' CONTENTIONS

Michael contends that she was "denied due process because she was not given a meaningful hearing on the substantial evidence that her unconditional gubernatorial pardon made her eligible to apply for [] licensure" pursuant to 24 *Del. C.* §§ 1910 and 1914.[30] In short, Michael argues that her conviction was the but for cause of "all that transpired with the Board after Michael's 2009 conviction," and therefore, according to Michael, because her pardon fully restored her "civil right" to pursue professional licensure, the Board erred in finding that it is bound by its 2013 Order permanently revoking Michael's licenses and rendering her ineligible for re-licensure by examination.[31] Michael further argues that her due process rights were violated because she was subjected to disparate and irreversible discipline because the Nurse Practice Act is the only profession or occupation covered by Title 24 that permits only "permanent revocation."[32] According to Michael, the permanent revocation is of the nature of a constitutional tort because: Michael is a

---

[29] January 11, 2017 Order at 3–4.
[30] Opening Br. at 15.
[31] *Id.* at 15–22.
[32] *Id.* at 23–25.

7

"member of an identifiable class;" "she was intentionally treated differently than others similarly situated;" and "there was no rational basis for the differing treatment."[33]

The Board counters that it did not deny Michael's due process by rejecting her argument that her criminal conviction was the but for cause of her licenses being revoked.[34] Further, the Board maintains that Michael's conviction was not the but for cause of the licenses revocation, rather, it was Michael's decision to fraudulently purchase Xanax and Michael's "willful decision to work as a nurse while her license was suspended for eight months" that caused her license to be revoked.[35] With respect to Michael's disparate treatment argument, the Board argues that the Nurse Practice Act, in the case of revocation, provides only for permanent revocation, and this unambiguous statutory language precludes the Board from issuing Michael new licenses.[36] Finally, with respect to Michael's "constitutional tort" argument, the Board maintains that this argument was not raised at the hearings and is now waived.[37] Even if not waived, the Board argues Michael's argument fails because Michael does not identify how she is being singled out by the Board compared with other similarly situated individuals.[38]

---

[33] *Id.* at 26.
[34] Answering Br. at 13.
[35] *Id.* at 14–15.
[36] *Id.*
[37] *Id.* at 25–26.
[38] *Id.* at 26–29.

## IV. STANDARD OF REVIEW

The role of the Court when reviewing appeals from the Board of Nursing is limited to determining whether the Board's factual findings are supported by substantial competent evidence and to determining whether the Board committed any errors of law.[39] Substantial evidence is evidence that would lead a reasonable mind to support a conclusion,[40] and during its review, "the Court is not authorized to make its own factual findings, assess credibility of witnesses or weigh the evidence."[41] Questions of law are reviewed *de novo*.[42]

## V. DISCUSSION

### A. The Effect of Michael's Pardon

Michael argues that she was denied of due process because she was denied a meaningful hearing on her application for licensure.[43] A professional license is considered property under the Fourteenth Amendment, thus providing the license due process protection.[44] Due process affords the licensee the right to receive notice to be heard "at a meaningful time and in a meaningful manner" prior to being

---

[39] *Villabona v. Bd. Of Med. Practice*, 2004 WL 2827918, at *2 (Del. Super. Apr. 28, 2004) (citations omitted).
[40] *Id.* (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).
[41] *Sokoloff v. Bd. Of Med. Practice*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010).
[42] *Villabona*, 2004 WL 2827918, at *2.
[43] Opening Br. at 14–15.
[44] *Villabona*, 2004 WL 2827918, at *6.

deprived of the property interest.[45]  Consistent with a license's status as property, Michael was afforded an opportunity to present her case and call witnesses on her behalf at the April 13, 2011 hearing, which resulted in the suspension of her licenses, and at the November 8, 2016 hearing, which resulted in the permanent revocation of her licenses.  Michael had the right to appeal both decisions to the Superior Court. She appealed the suspension, but not the permanent revocation.  The Board also held a hearing when Michael applied to have her licenses reinstated and applied for licensure by examination.  Michael was represented by an attorney and was able to present evidence.  Thus, although styled as a matter of "due process," the core question raised in this case is whether the Board properly determined that it did not have the authority—taking into consideration the effect of Michael's pardon—to either reinstate Michael's licenses or to issue new ones.

Michael's argument concerning the effects of a pardon has two aspects: (1) to what extent a pardon erases the consequences flowing from a prior criminal conviction; and (2) whether a nursing license is a "civil right" which is restored upon the issuance of a pardon.

Regarding the first aspect, Michael states that because the unconditional pardon was "as if the conviction had never occurred,"[46] the Board erred in finding

---

[45] *Slawik v. State*, 480 A.2d 636, 645 (Del. 1984) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

[46] Opening Br. at 21.

10

that it did not have the authority to issue her licenses. On this point, Michael's contention that the effect of the pardon is "as if [the] conviction had never occurred" is not a correct statement of Delaware law.[47] As the Delaware Supreme Court explained in *Heath v. State*,[48] "the pardon may have forgiven [the offender's] conviction, [but] it did not obliterate the public memory of the offense . . . a pardon does not erase guilt."[49] Similarly, in *State v. Skinner*,[50] the Delaware Supreme Court stated, a "pardon 'involves forgiveness and not forgetfulness' and it does not 'wipe the slate clean.'"[51]

With regard to the second aspect, Michael argues that by statute a pardon "shall have the effect of fully restoring all civil rights to the person pardoned."[52] Therefore, according to Michael, her ability to acquire new nursing licenses was restored because a license to practice nursing is a "civil right."[53] In support for the conclusion that her nursing license is a "civil right," Michael makes no argument, but rather cites to *Villabona v. Board of Medical Practice*.[54]

Contrary to Michael's implication, nowhere does the Court in *Villabona* hold or indicate that a professional license is a "civil right." In *Villabona,* the Court

---

[47] Opening Br. at 21.
[48] 938 A.2d 77 (Del. 2009).
[49] *Id.* at 81.
[50] 632 A.2d 82 (Del. 1993).
[51] *Id.* at 84.
[52] 11 *Del. C.* § 4364.
[53] Opening Br. at 19.
[54] 2004 WL 2827918 (Del. Super. Apr. 28, 2004).

11

recognizes that a professional license is a *property right* and protected accordingly under the Fourteenth Amendment.[55] From this language, Michael reaches the conclusion, without any supporting argument or further citation, that a professional license is a "civil right."[56] As such, Michael's argument falls far short of establishing that her pardon restored, either directly or indirectly, the Board's ability to reinstate Michael's licenses or to issue her new ones. That said, regardless of whether a pardon could result in the reissuance of a professional license under other circumstances, the Board correctly determined that it did not have the authority to reinstate Michael's licenses or to issue her new ones because Michael's license was not revoked solely as the result of her conviction.[57]

First, the Board originally suspended Michael's nursing license, not only because Michael was convicted of a crime substantially related to nursing (24 *Del. C.* § 1922(a)(2)), but also because: (1) Michael was unfit to practice nursing by reason of negligence, habits or other causes (24 *Del. C.* § 1922(a)(3)); (2) Michael's behavior failed to conform to the legally accepted standards of the nursing

---

[55] *Id.* at *6.

[56] Pursuant to 11 Del. C. § 4364, civil rights restored by pardon consist of, but are not limited to, "the right to vote, the right to serve on a jury, the right to purchase or possess deadly weapons and the right to seek and hold public office."

[57] *See Heath*, 983 A.2d at 81 (Heath, a convicted sex offender, was granted an unconditional pardon for a sex offense. The Court found this represented a true "but for" situation. The Court explained the reason for the sex offender registry is propensity for recidivism. An unconditional pardon "constitutes a finding that the petitioner poses no threat to the public" and, "the unconditional pardon extinguishes the underlying premise for the sex offenders' registration obligation.").

profession and adversely affected the health and welfare of the public (24 *Del. C.* § 1922(a)(8) and Board Regulation 10.4.2.1); and (3) Michael diverted, possessed, obtained and administered prescriptions to herself without proper authorization (24 *Del. C.* § 1922(a)(8) and Board Regulation 10.4.2.15).

On this point, the Board can—and does—impose professional discipline pursuant to § 1922 for conduct not resulting in criminal convictions. For example, in *Decker v. Board of Nursing*,[58] Decker diverted medications while in the prison infirmary. Decker was found to have violated 24 *Del. C.* §§ 1922(a)(3) and (a)(8), the same sections that Michael was found to have violated. Decker was never criminally convicted, but nevertheless the Board suspended her nursing license.[59]

Second, and more importantly, the Board permanently revoked Michael's nursing licenses because Michael practiced nursing without a license for eight months.[60] Michael's decision to practice nursing without a license is entirely separate from her conviction, and her pardon.

Upon *de novo* review, in light of the foregoing and considering the plain meaning of the statutory language which provides that license revocations under the Nurse Practice Act are "permanent," the Court finds that the Board correctly

---

[58] 2013 WL 5952103 (Del. Super. Nov. 7, 2013).
[59] *See Hicks v. State*, 1994 WL 164507 (Del. Super. Apr. 22, 1994) (nursing license suspended for two years for violating 24 *Del. C.* § 1922(a)(4) with no related criminal conviction); *Frazer v. Bd. Of Nursing*, 2016 WL 6610320 (Del. Super. Nov. 9, 2016) (nursing license suspended for controlled substance medication errors with no related criminal conviction).
[60] Oct. 9, 2013 Order at 2.

determined that it does not have the authority to either reinstate Michael's licenses or to issue her new ones.

## B. Disparate Treatment

With respect to her allegation of disparate treatment, Michael argues that there are over forty practice acts under Title 24 and only Chapter 19, the Nurse Practice Act, uses "permanently revoke" exclusively in the list of disciplinary sanctions (as opposed to allowing simple revocation or temporary revocation), and this leads to inequitable discipline.[61] Michael concludes this is "discriminatory" to a profession that "has historically been female-dominated."[62]

As the Delaware Supreme Court has explained, "when provisions are expressly included in one statute but omitted from another, we must conclude that the General Assembly intended to make those omissions,"[63] and "[i]f an otherwise valid statute causes or leads to an inequitable result, then it is the sole province of the legislature to correct it."[64] Accordingly, in this case, because the statute uses the term "permanently revoke," "there is no room for judicial interpretation and the plain

---

[61] Opening Br. at 25 stating "[t]hree have "revoke" or 'permanently revoke;' two have 'revoke' or 'permanently revoke for conviction of a felony sexual offense,' and "31 simply have 'revoke.'
[62] *Id.* at 27.
[63] *Leatherbury v. Greenspun*, 939 A.2d 1284, 1291 (Del. 2007).
[64] *Serv. Comm'n v. Wilmington Suburban Water Corp.*, 467 A.2d 446, 451 (Del. 1983).

14

meaning of the statutory language controls."[65] The Court finds Michael's disparate treatment argument meritless.

Next, Michael argues that "what has been done to Michael is in the nature of a constitutional tort" because Michael is a member of an "identifiable class" who was "intentionally treated differently than others similarly situated," and there was "no rational basis" for the difference in treatment.[66] The Board counters that since these arguments were not raised previously, they are now waived.[67] Assuming *arguendo* that the argument was not waived, it is readily apparent that Michael's argument is meritless.

In support of her argument that she has suffered a "constitutional tort," Michael cites to *Village of Willowbrook v. Olech*.[68] In *Willowbrook*, the Village of Willowbrook ("Village") required the Olechs to provide a thirty-three-foot easement to connect their property to the municipal water supply, but only required a fifteen-foot easement from all other property owners.[69] The Village later relented and provided the connection to the municipal water supply with the fifteen-foot easement, and the Olechs brought suit for an equal protection violation.[70] The

---

[65] *Jimmy's Grille of Dewey Beach, LLC v. Town of Dewey Beach*, 2013 WL 6667377 (Del. Super. Dec. 17, 2013) (citing to *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011)).
[66] Opening Br. at 26.
[67] *Id.* at 25.
[68] 528 U.S. 562 (2000).
[69] *Id.* at 563.
[70] *Id.*

15

Olechs claimed that they were being treated differently than all other property owners within the Village because, initially, the Village required their easement to be eighteen feet larger than the other property owners. Further, since the Village later relented and allowed the fifteen-foot easement, this was evidence that the initial thirty-three-foot easement was an "irrational and wholly arbitrary" decision.[71] The U.S. Supreme Court ruled that "where a plaintiff did not allege membership in a class or group," they can bring an equal protection clause cause of action as a "class of one."[72] Further, the Court held that the plaintiff's claim could proceed because the allegation by plaintiffs was that the "Village's demand was 'irrational and wholly arbitrary.'"[73]

Contrary to Michael's implication that she is a "class of one" akin to the Olechs, Michael is a member of an identifiable class—nurses who have had their licenses permanently revoked and have reapplied for licensure. In order for Michael to bring an equal protection claim as a "class of one," she must show that she was treated differently than those similarly situated.[74] However, all members of Michael's class are unable to seek licensure as a result of the permanent revocation of their nursing license(s). Thus, Michael's constitutional tort argument fails.

---

[71] *Id.*
[72] *Id.* at 564–65.
[73] *Id.* at 565.
[74] *Id.* at 564.

16

## VI. CONCLUSION

For the foregoing reasons, the January 11, 2017 Order of the Board of Nursing is **AFFIRMED**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

17