NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2021-0376

CC 145 MAIN, LLC

v.

UNION MUTUAL FIRE INSURANCE COMPANY

Argued: June 14, 2022
Opinion Issued: July 20, 2023

Stebbins, Lazos & Vanderbeken PLLC, of Manchester (Henry B. Stebbins on the brief and orally), for the plaintiff.

Primmer Piper Eggleston & Cramer PC, of Manchester (Gary M. Burt and Bailey M. Robbins on the brief, and Gary M. Burt orally), for the defendant.

HICKS, J.  The defendant, Union Mutual Fire Insurance Company, appeals an order of the Superior Court (Honigberg, J.) granting summary judgment to the plaintiff, CC 145 Main, LLC, in a declaratory judgment action regarding the interpretation of an insurance policy exclusion.  The defendant challenges the trial court's ruling that the policy's water damage exclusion was ambiguous and its decision to construe the policy, therefore, in favor of CC 145 Main.  We affirm.

The following facts are supported by the record or are not in dispute.  CC 145 Main owns an apartment building in Newmarket.  To protect this

operation, it purchased from Union Mutual a "Businessowners Coverage" insurance policy that includes "all risk" property insurance, which provides that Union Mutual will "pay for direct physical loss of or damage to" the covered property, unless coverage is specifically limited or excluded by the policy. See Caryn L. Daum, A Primer on New Hampshire First-Party Property Insurance, 52 N.H.B.J. 20, 21 (Autumn 2011) ("An 'all risk' policy typically covers any risk of direct physical loss or damage that is not specifically excluded or limited by the terms of the policy."); see also Russell v. NGM Ins. Co., 170 N.H. 424, 429-30 (2017) (describing an "all risk" property insurance policy).

CC 145 Main contends, and Union Mutual does not dispute, that the insured property sustained damage when a tenant poured cat litter down a toilet, clogging an interior pipe and causing water to overflow from a shower and toilet. The property required significant cleaning and repair, and tenants were required to temporarily relocate. CC 145 Main filed a claim with Union Mutual for water damage, which Union Mutual denied pursuant to a provision in the insurance policy excluding coverage for damage caused by "[w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment."

CC 145 Main filed a complaint seeking a declaration that the water exclusion does not apply to its claim. Union Mutual filed a motion for summary judgment, arguing that the damage at issue was caused by water that overflowed from "drains" within the meaning of the exclusion. CC 145 Main objected and filed a cross-motion for summary judgment. The trial court granted CC 145 Main's motion and denied Union Mutual's motion, concluding that it is unclear whether the word "drain" in the water exclusion applies to shower and toilet drains and, therefore, the water exclusion is ambiguous and must be construed in favor of CC 145 Main. It reasoned, inter alia, that "[i]nterpreting drain to mean literally any drain," such as a shower drain, "would set this term apart from the others in the provision" — such as "sewer" and "sump pump" — which "are typically external features that are intended to carry water away from a property." This appeal followed.

On appeal, Union Mutual argues that the trial court erred by finding the water exclusion ambiguous because the only reasonable interpretation of the exclusion is that it applies to water that overflows from toilet and shower drains. CC 145 Main counters that the trial court reached the correct result because the relevant portion of the water exclusion is ambiguous when read in context.

In reviewing rulings on cross-motions for summary judgment, "we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law."

2

<u>Ro v. Factory Mut. Ins. Co.</u>, 174 N.H. 112, 116 (2021) (quotation omitted).  "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment."  <u>Id</u>. (quotation omitted).  We review the trial court's application of the law to the facts <u>de</u> <u>novo</u>.  <u>Id</u>.

This appeal requires that we interpret the language of the insurance policy.  "The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for this court to decide."  <u>Mellin v. N. Sec. Ins. Co.</u>, 167 N.H. 544, 547 (2015).  In a declaratory judgment action to determine the coverage of an insurance policy, the burden of proof is always on the insurer, regardless of which party brings the petition.  <u>Id</u>.; RSA 491:22-a (2010).

"The fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties."  <u>Bartlett v. Commerce Ins. Co.</u>, 167 N.H. 521, 530 (2015) (quotation omitted).  To discern the parties' intent, we first examine the language of the policy itself and look to the plain and ordinary meaning of the policy's words in context.  <u>Id</u>.  We construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole.  <u>Id</u>. at 530-31.  Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning.  <u>Id</u>. at 531.  We need not examine the parties' reasonable expectations of coverage when a policy is clear and unambiguous; absent ambiguity, our search for the parties' intent is limited to the words of the policy.  <u>Id</u>.  The fact that parties may disagree on the interpretation of policy language does not necessarily create an ambiguity.  <u>Id</u>.  For an ambiguity to exist, the disagreement must be reasonable.  <u>Id</u>.

In determining whether an ambiguity exists, we consider the disputed policy language in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions.  <u>Id</u>.  If one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer in order to honor the insured's reasonable expectations.  <u>Id</u>.  However, when "the policy language is clear, this court will not perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended."  <u>Id</u>. (quotation omitted).

The language at issue in this case is contained within the following exclusion:

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the

loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . . .

    g. Water

        (1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

        (2) Mudslide or mudflow;

        (3) Water that backs up or overflows or is otherwise discharged from a sewer, <u>drain</u>, sump, sump pump or related equipment;

        (4) Water under the ground surface pressing on, or flowing or seeping through:

            (a) Foundations, walls, floors or paved surfaces;

            (b) Basements, whether paved or not; or

            (c) Doors, windows or other openings; or

        (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

(Bolding omitted; emphasis added.) We begin by analyzing Union Mutual's argument. Union Mutual focuses its argument on the term "drain," arguing that this term unambiguously encompasses water overflowing from showers and toilets. "Drain" is defined as "[a] channel by which liquid is drained or gradually carried off; <u>esp.</u> an artificial conduit or channel for carrying off water, sewage, etc.," <u>Oxford English Dictionary</u>, https://www.oed.com/view/Entry/ 57459?rskey=TcQDG6&result=1&isAdvanced=false#eid (last visited July 11, 2023), or "an artificial channel by means of which liquid or other matter is drained or carried off," <u>Merriam-Webster Unabridged</u>, https:// unabridged.merriam-webster.com/unabridged/drain (last visited July 11, 2023). Shower drains meet these definitions. As for the toilet overflow, a toilet is a receptacle "connected by plumbing to a system for flushing away the waste into the sewer." <u>Oxford English Dictionary</u>, https://www.oed.com/view/ Entry/202921?rskey=nH4oj4&result=1&isAdvanced=false#eid (last visited July 11, 2023). Consulting these definitions, we find reasonable Union Mutual's argument that "[t]he toilet that backed up and overflowed was connected to a drain" — the drain is part of the "system" that the toilet relies upon to flush away the waste — and, therefore, that a toilet is "related equipment" to a drain. Union Mutual also correctly observes that there is no language within the exclusion that explicitly limits the application of this term to certain types of drains or causes of overflow. See <u>Keene Auto Body v. State Farm Mut. Auto. Ins. Co.</u>, 175 N.H. 503, 507-08 (2022) (concluding insurer's reading of policy

provision was reasonable in light of broad language and absence of qualifying language).  Accordingly, we are satisfied that Union Mutual's reading of the water exclusion is reasonable.  See id.

However, CC 145 Main presents a reasonable, alternative interpretation of the exclusion.  It argues that context contained within the insurance policy limits the water exclusion's applicability to water damage precipitated by off-premises circumstances or events.  We agree that context could cause a reasonable insured to understand the exclusion in this way.  See Bartlett, 167 N.H. at 530-31.  As CC 145 Main correctly observes, the other subsections of the water exclusion contemplate only causes of damage — flooding from any body of water, mudslide or mudflow, and groundwater "flowing or seeping" into the property — that, necessarily, originate outside the property and cause water to flow into it.  See Mellin, 167 N.H. at 552-54.

Additionally, the water exclusion contains the following example:

> An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

This is the only example contained within the water exclusion.  Contrary to Union Mutual's assertion that the example is "clearly not intended to limit the scope of the Exclusion," the trial court found, and we agree, that this example would fortify a reasonable insured's impression that the exclusion is intended to encompass water damage caused by events external to the property, and not water damage resulting from an internal pipe clogged by a tenant's disposal of cat litter.  Cf. id. at 555 (observing that, reading a pollution exclusion in context, "an insured may have reasonably understood that [it] precluded coverage for damages resulting from odors emanating from large-scale . . . industrial settings," as opposed to odors "created in a private residence").

Union Mutual responds that "the context in which the term 'drain' appears in the Policy does not render the term ambiguous."  To this end, Union Mutual provides textual arguments for why the word "drain" must be interpreted as encompassing overflow from both internal and external drains.  However, Union Mutual provides no argument to counter CC 145 Main's position that the precipitating cause of the overflow must be external, nor does Union Mutual identify policy language or articulate reasoning to contradict CC 145 Main's contextual arguments.  See Mellin, 167 N.H. at 547 (insurer has burden to prove lack of coverage in declaratory judgment actions to determine insurance coverage).

Rather, Union Mutual's refutation of CC 145 Main's argument relies largely on out-of-state authority.  However, far from settling the issue, the few

5

courts that have been called upon to interpret exclusions identical or nearly identical to the one before us have reached differing results. Compare Kelley Street Associates v. United Fire & Casualty Co., No. 14-14-00755-CV, 2015 WL 7740450, at *3-8 (Tex. App. 2015) (concluding that exclusion encompassed damage caused by water flowing from an internal drain), and Cardio Diagnostic Imaging, Inc. v. Farmers Ins. Exch., 150 Cal. Rptr. 3d 798, 800, 803 (Cal. Ct. App. 2012) (rejecting insured's arguments that analogous water exclusion applied only to damage caused by major external events and that "drain" does not include a toilet), with Cameron v. Scottsdale Ins. Co., 726 F. App'x 757, 760-62 (11th Cir. 2018) (per curiam) (concluding that identical exclusion applied only to "water damage caused in part by outside forces"), and Pichel v. Dryden Mut. Ins. Co., 986 N.Y.S.2d 268, 270, 271-72 (N.Y. App. Div. 2014) (holding that exclusion for damage caused by "water which backs up through sewers or drains" was ambiguous because a reasonable insured could read it as not applying to water damage caused by clogged drains, but rather applying "if the cause of the backup/overflow is from outside the insured's property boundaries").

Union Mutual attempts to distinguish the cases in which courts have found such exclusions ambiguous by observing that those cases "involve policies that contain contradictory provisions which provide coverage from water damage arising from internal plumbing," and asserting that, here, the policy "contains no such affirmative coverage provision." We are not persuaded. The policy at issue in this case explicitly provides coverage, under certain circumstances, for damage caused by "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance . . . containing water or steam," as well as damage from water that "leaks or flows from plumbing" as a result of frozen pipes. It would seem odd to an insured — as it did to the trial court — that a policy providing coverage for frozen and ruptured internal piping "would not also provide coverage when an internal pipe fails in a manner that causes a toilet to overflow."

The foregoing discussion demonstrates a "reasonable disagreement between the contracting parties leading to at least two interpretations of the policy's language." Exeter Hosp. v. Steadfast Ins. Co., 170 N.H. 170, 179 (2017) (quotation and brackets omitted); see also M. Mooney Corp. v. U.S. Fidelity & Guaranty Co., 136 N.H. 463, 472 (1992) (finding an insurance policy provision ambiguous "[i]n light of the parties' reasonable and contradictory interpretations"). Because we conclude that the exclusion is ambiguous, we must construe it against the insurer. Trombly v. Blue Cross/Blue Shield, 120 N.H. 764, 771-72 (1980). We therefore conclude that the water exclusion did

not encompass the water damage to CC 145 Main's property and did not preclude insurance coverage. Accordingly, we affirm.

Affirmed.

DONOVAN, J., concurred; ABRAMSON, J., retired superior court justice, specially assigned under RSA 490:3, concurred; MACDONALD, C.J., and BASSETT, J., dissented.

MACDONALD, C.J., and BASSETT, J., dissenting. A fundamental principle of contract interpretation is to give effect to the unambiguous meaning of the words to which the parties agreed. The unambiguous language at issue here excludes coverage for damage caused by water that overflowed from a "drain." Although the majority rightly determines that the exclusion can reasonably be read to encompass damage caused by water that overflowed from shower and toilet drains, the majority nonetheless concludes that the damage to CC 145 Main's property is covered. In order to reach this result, the majority posits an alternative "reasonable" interpretation of the water exclusion that goes well beyond the arguments advanced by CC 145 Main. Because we believe Union Mutual's is the only reasonable reading of the policy, we respectfully dissent.

Union Mutual has the burden to prove that the policy did not cover the damage to CC 145 Main's property. See RSA 491:22-a (2010). The majority concludes that Union Mutual did not meet its burden because "Union Mutual provides no argument to counter CC 145 Main's position that the precipitating cause of the overflow must be external." However, CC 145 Main does not, as the majority contends, argue that the water exclusion may be reasonably read as applying "to water damage precipitated by off-premises circumstances or events." (Emphasis omitted.) Rather, CC 145 Main focuses on the definition of "drain," arguing that the term creates a "semantic ambiguity" and that, reading the exclusion in context, "[t]he drains referenced . . . must be off-premises."

Properly framed, CC 145 Main's argument lacks merit. The word "drain" appears in a list with "sump" and "sump pump," which — contrary to the trial court's characterization — are typically, if not always, internal features of the property. See U.S. Dep't of Energy, Drain or Sump Pump Installed in Basements or Crawlspaces, https://basc.pnnl.gov/resource-guides/drain-or-sump-pump-installed-basements-or-crawlspaces#edit-group-description (last visited July 11, 2023). Because "drain" appears alongside these words, it would be anomalous to interpret it as excluding internal drains such as shower and toilet drains, absent some other indication that we should do so. See Home Gas Corp. v. Strafford Fuels, Inc., 130 N.H. 74, 82 (1987) (explaining that, under the canon of construction noscitur a sociis, "the broader term itself

7

takes on the more specialized character of its neighbors, under the rule that applies as well to one term within a series as it does to an individual within a group"); see also 11 Richard A. Lord, Williston on Contracts § 32:6, at 708-12 (4th ed. 2012) (defining noscitur a sociis).

Even if we were to accept the majority's characterization of CC 145 Main's argument, we would not be persuaded. In concluding that the water exclusion applies only to damage precipitated by events or circumstances external to the property, the majority asserts that "the other subsections of the water exclusion contemplate only causes of damage . . . that, necessarily, originate outside the property and cause water to flow into it." But that is not the case. For example, subsection (4) of the water exclusion applies to damage caused by water "flowing or seeping through: (a) Foundations, walls, floors or paved surfaces; (b) Basements, whether paved or not; or (c) Doors, windows or other openings." (Bolding omitted.) It is simply not the case that, given this list, one can fairly state that the cause of damage "necessarily" originates outside the property. Subsection (4) of the exclusion applies to damage precipitated by a property's floors, walls, or openings — decidedly "internal" features of the property.

Additionally, we are unconvinced by the majority's assertion that the single example located at the end of the water exclusion "would fortify a reasonable insured's impression" that the exclusion refers only to damage caused by external events or circumstances. The example is intended only to clarify that the exclusion applies to water damage caused by a failed water containment system; it plainly does not encompass the full panoply of water damage to which the exclusion refers. We are unconvinced that the example highlighted by the majority would so influence a reasonable insured's understanding of the water exclusion that he or she would disregard the exclusion's plain language. For these reasons, we do not agree with the majority that the water exclusion, considered as a whole, can be reasonably read as referring to damages caused only by external events or circumstances.

The majority also asserts that Union Mutual's interpretation of the insurance policy creates a conflict between the water exclusion and another policy provision. The majority states:

> It would seem odd to an insured — as it did to the trial court — that a policy providing coverage for frozen and ruptured internal piping "would not also provide coverage when an internal pipe fails in a manner that causes a toilet to overflow."

However, we have never held that "seeming odd" is sufficient to create an ambiguity in otherwise clear policy language. If we can construe two purportedly contradictory policy provisions harmoniously, we do so, consistent with our practice of interpreting insurance policies according to their plain

8

language.  See Barbuto v. Peerless Ins. Co., 156 N.H. 565, 569 (2007) (distinguishing a situation in which two provisions actually conflict from one in which they can apply in a way that does not conflict); Int'l Surplus Lines Ins. Co. v. Mfgs. & Merchants Mut. Ins. Co., 140 N.H. 15, 20 (1995) ("[I]n determining whether an ambiguity exists, we . . . construe the words used according to their plain, ordinary, and popular definitions." (Quotation omitted)).  Indeed, to construe an insurance policy against the insurer because some aspect of the policy "seems odd" would constrain insurers' "free[dom] to contractually limit the extent of their liability," however they choose, "provided that they violate no statutory provision by doing so."  Santos v. Metro. Prop. & Cas. Ins. Co., 171 N.H. 682, 686 (2019).

Finally, the majority overlooks the fact that another policy provision expressly provides or excludes coverage based on whether the cause of a loss originates within or outside the insured's property.  The Utility Services exclusion applies to damages caused by:

> The failure of power, communication, water, or other utility services supplied to the described premises, however caused, if the failure:
>
> (1) Originates away from the described premises; or
>
> (2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

(Bolding omitted; emphases added.)  Given that this exclusion expressly distinguishes between interior and exterior origins of loss, a reasonable insured engaging in "more than a casual reading of the policy as a whole," Santos, 171 N.H. at 686, would have no reasonable basis to read such a distinction into the water exclusion, which is silent in that respect.

For the foregoing reasons, we disagree with the majority's conclusion that CC 145 Main presents "a reasonable, alternative interpretation of the exclusion."  We respectfully dissent.

9